**UNITED STATES of America,
Plaintiff,**

**v.**

**Clarence K. OKAWA, Defendant.**

**Cr. No. 11526.**

United States District Court
D. Hawaii.

Jan. 5, 1961.

1960 filed a motion for return of seized property and suppression of evidence supported by affidavit and memorandum. The government on December 5, 1960 filed a memorandum in opposition to the motion indicating therein its intention to adduce evidence (specifying some of the facts they intended to prove) to contradict some of the material allegations of the motion and affidavit of defendant, and contending, among other things, that the affidavit of defendant is not evidence within the meaning of Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C., citing United States v. Warrington, D.C., 17 F.R.D. 25.

At the hearing the defendant preliminarily contended that, in the absence of a formal "return to the motion" or counter-affidavit filed by the government, contradicting the allegations of the defendant's affidavit, the court should accept the affidavit as establishing prima facie the facts therein stated, and should decide the motion accordingly, or compel the government to proceed by testimony or otherwise to disprove the alleged prima facie case of the defendant. The defense counsel in this connection relied upon an alleged customary practice in local courts of sanctioning the filing of a written return to a motion by the opposing party.

As a former practicing attorney in the courts of this state, which in 1954 adopted substantially the Federal Rules of Civil Procedure, I am aware that, out of an abundance of caution, there is a practice among some attorneys, but by no means an invariable one, of filing in civil actions some sort of a written document, variously designated as "return", "reply", "opposition", etc. "to motion", in order to evidence opposition to a motion.

■ I am convinced, however, from my research, that the Federal Rules of Civil Procedure [1] do not require any for-

Louis B. Blissard, U. S. Atty., By Rex S. Kuwasaki, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff.

Yasutaka Fukushima, Honolulu, Hawaii, for defendant.

TAVARES, District Judge.

In this case, after being indicted on November 10, 1960 on two counts of unlawfully possessing a firearm in violation of Title 26 U.S.Code §§ 5851 and 5861, the defendant on November 23,

---

1. It seems proper to refer by analogy to the practice under the *civil* rules, since Rule 47 of the criminal rules, applying to motions generally in criminal cases, has been taken largely from Rule 7(b) (1) of the civil rules, 28 U.S.C. See

mal answer, return or reply to a motion, except where the Federal Rules or local rules may require affidavits, memoranda or other papers to be filed in opposition to a motion. Such papers, however, are simply to apprize the court of such opposition and the grounds thereof.

■ Likewise I am convinced that there is no requirement of a formal answer, return or reply to a motion for return of property and to suppress evidence under Rule 41(e), 47 or any other rule of the Federal Rules of Criminal Procedure.[2]

The state of Hawaii has adopted substantially the Federal Rules of Criminal Procedure so recently (July, 1960) that there has been no opportunity to establish any common practice or precedent on the matter in the state courts. As to the local Federal court, I am not aware of any decision on the point, or any common practice of filing such an answer, return or reply to a civil or criminal motion sufficiently common to be given any significance in the way of a practical interpretation of the Federal Rules.

■ This district court for Hawaii has adopted Rules of Civil Procedure, last amended in March 21, 1955 when Hawaii was a territory, Rule 2 of which covers motions. Assuming that these rules are continued in effect under the law admitting Hawaii to statehood (Act of March 18, 1959, Public Law 86–3, 86th Cong., particularly §§ 9–15, 48 U.S.C.A. note preceding section 491) they never-

theless apply only to civil motions. However it would seem significant that, like the Federal Rules of Civil Procedure, this Rule 2 says nothing about any requirement of a formal answer, return or reply to a civil motion.

■ I reiterate my earlier oral ruling that the government was not required, under the Federal Rules of Criminal Procedure, to file any formal answer, return or reply to the motion of defendant in this case; that it was entitled to appear on the return day, unless otherwise previously ordered by the court for good cause, and state to the court, orally or in writing its opposition to the motion and an indication that there would be a factual issue to be determined; and that, this having been done by the filing by the government of a memorandum, the presumption of regularity of the government officers' conduct applied prima facie, and threw the burden of making a prima facie showing in support of the motion upon the defendant; that, there being an issue of fact, the defendant's affidavit was insufficient "evidence" to cast upon the government the burden of going forward with its proof in opposition to the motion, and the defendant was therefore required, under the Warrington case, supra, to put on competent evidence on this issue of fact before the government was required to prove contra facts by similar competent evidence. This ruling, of course, is confined to a situation like the present, where such a motion is made

18 U.S.C.A.Fed.R.Crim.Proc., note to Rule 47.

For civil practice as to papers in opposition to motions, but not all under the Federal Rules, see, among others, 1 Benders' Fed.Pr.Forms, Note 19 to Form No. 80.1, pp. 114.2–114.3 and authorities cited; 1A Barron & Holtzoff, Fed.Prac. & Proc., Rules Ed., 21, § 244; 60 C.J.S., Motions and Orders §§ 33, 34, pp. 29–31; 37 Am.Jur. 508, §§ 15, 16.

2. I agree generally with the conclusions and reasoning of United States v. Warrington, supra, but, in view of Rule 2,

Fed.R.Crim.Proc., I would stop short of holding the filing of an affidavit to be improper or useless where an issue of fact not appearing of record is anticipated. Even if, upon a contested hearing, such an affidavit is not considered "evidence" sufficient to shift the burden of going forward with the evidence to the government, it is at least as useful as a statement of grounds in a motion, and, for aught that a defendant might know in advance when filing his motion, might conceivably be admitted by the government, thereby forming an issue of law upon the agreed facts.

by the defendant in advance of trial. See Note No. 2, supra.

At the hearing, after satisfying itself that there was disagreement between the defendant and the government as to the basic facts involved in the motion so as to rule out any pure question of law on the alleged facts set out in the defendant's affidavit, the court required the defendant to proceed with his proof, and testimony was thereupon adduced, first by the defendant, and then by the government in opposition thereto.

Except for one basic fact hereafter discussed, the evidence seems substantially uncontradicted. This testimony established that the defendant Okawa had been, by the police department of the City and County of Honolulu under surveillance on suspicion of dispensing narcotics for a period of about six months immediately prior to the alleged illegal search and seizure. The defendant, therefore, and the license number and description of the automobile, being a brown and white 1960 Dodge sedan, were known to the police department and particularly to the members of the vice division thereof.

A rookie policeman named Ronald Castello in the employ of the police department as an officer and undercover agent, on or about October 8, 1960 apparently won the defendant's confidence, and most of the facts hereinafter stated as to the October 8th incident are from Mr. Castello's testimony. On October 8, 1960 Castello met defendant and a friend of defendant, not identified by the evidence, at a corner store at Liliha and School Streets about 7:30 p.m. They left in Mr. Okawa's vehicle with the friend driving and Okawa directing him. Under such direction the vehicle was driven to the Chun Hoon Drug Store where the friend went into the drugstore leaving Okawa and Castello in the car. While the friend was gone Okawa opened, with a key in his possession, the glove compartment forward of the front seat of the car and took out a 38-calibre type pistol and an-

other weapon of a similar type and showed them to Castello who asked Okawa if he would sell Castello one of them. Okawa declined to do so at that time but said that he would let Castello know the following day whether he would sell one.

Thereupon the friend came back from the drugstore with cigarette paper that he had purchased at the store and Okawa directed him to drive to a Young Street address, which he did. On the way to the Young Street address Okawa took what looked like marihuana and made cigarettes out of it; but Okawa "had it with him" and Castello did not know where Okawa got it. As Okawa made the cigarettes he gave Castello one and made another and shared it with his friend. Castello lit the cigarette and pretended to smoke it.

Arriving at the Young Street address, somewhere in the 2400 block, Okawa told his friend to come back about an hour later for him, and got out of the car. Just prior to dropping Okawa off, Castello asked Okawa if he could have some marihuana, and Okawa said "Sure," but apparently did not hand Castello any just at that time.

Upon dropping Okawa off, the friend drove the car with Castello in it to the Donald Duck Drive-in where they had coffee. They returned about an hour later to the Young Street address, where Okawa was found waiting. Okawa told the driver that he had decided to stay a little longer and to come back later. At this time, apparently in response to Castello's earlier request for marihuana, Okawa opened the right front door of the automobile, opened the glove compartment with a key Okawa had, took out a bundle, about 3 inches in circumference, of something wrapped up in newspaper, containing a substance that looked like marihuana, and gave Castello a portion of it.

Castello did not notice what was in the glove compartment, except, apparently, the bundle that was taken out by Okawa and the two firearms earlier men-

tioned, and Castello could not remember just what Okawa then did with the compartment and whether he put the bundle of marihuana back in the compartment. Thereafter, the friend driving the car left Okawa at the Young Street address a second time and drove to the Liliha Street place, where Castello's automobile was and dropped Castello there. Thereupon Castello notified his superior in the police department, vice officer Francis Keawa, as to what had happened and had a rendezvous with Keawa and Sergeant Howell at an out-of-the-way place. Castello turned over the substance Okawa had given him to Officer Keawa, who in turn took it to the police station, typed a report and put the substance with the report in a safe in the vice office. This being on a Saturday evening, Keawa did not turn over the substance until Monday afternoon, October 10, when he turned it over to Chemist Tom of the police department who made an analysis and reported to Officer Keawa at about 2:30 p. m. that it was marihuana.

Upon receipt of this report certain officers of the police department, including Captain Iaukea and Officer Straus, were notified, all facts of the case were given to them, and men of the vice division were sent out on the same day, October 10, with orders to arrest Okawa for dispensing marihuana. One of the men ordered to locate Okawa was Officer Castello, who, in another car, found the automobile of Okawa at the Donald Duck Drive-in and, remaining in the background, informed the captain who passed the information out to the men.

It was also stipulated, for the purposes of this hearing, that the substance turned over to Chemist Tom was in fact marihuana.

Sergeant Howell of the vice division was one of those told to go and pick up Okawa. He proceeded at about 5:30 p. m. in a police car to the Donald Duck Drive-in where he had information, apparently relayed from Castello, that Okawa could be found; in the car with Howell were two other officers, Aku and Ladarias. Other officers had been notified to proceed to the same location to assist.

According to the testimony of Sergeant Howell and others, which the court finds credible, the purpose of this foray was to apprehend and arrest Okawa for the October 8 incident of dispensing marihuana to Officer Castello. The officers went to the Donald Duck Drive-in where Mr. Okawa's vehicle was parked in the drive-in and waited about ten minutes until they saw Okawa come out to the same car of Okawa's, previously described, with another person who drove the car. The reason for waiting was explained by Sergeant Howell to be that he was not sure that Okawa was in the restaurant "and I was more or less sure that we would be in a better position if we saw him in the car"; also that he had information, again derived from Castello based on the October 8 incident, that there was a possibility of marihuana and weapons being in the car.

As soon as the car operated by Mr. Okawa's friend and in which he was riding after coming out of the Donald Duck Drive-in had turned into Kapiolani Boulevard and after it had gone about 25 yards, Sergeant Howell drove his car in front of Okawa's and stopped it and immediately walked around to the right hand front seat, produced his badge, gave his name as Sergeant Howell and placed Okawa under arrest for dispensing marihuana.

Sergeant Howell said he asked the defendant if the latter would submit to arrest and received an affirmative answer. The defendant and Sergeant Howell opened the door apparently at the same time, and, as soon as the defendant got out of the car, Sergeant Howell had him handcuffed. In the defendant's right hand was a set of keys. Sergeant Howell asked Okawa if these were keys to the glove compartment and the trunk of the car, and Okawa nodded his head. Howell then told defendant he was going to open the glove compartment and the trunk and

defendant said "go ahead". The sergeant unlocked the glove compartment and a fellow-officer, Kasparovitch, checked that compartment while the sergeant went to the rear and opened the trunk compartment. Officer Kasparovitch called attention to a revolver and newspaper-wrapped package which Kasparovitch had gotten out of the compartment, the package containing a substance which looked like marihuana and later proved to be such.

Officer Howell thereupon, on the spot, informed Okawa that he was arresting Okawa for being offensively armed and for possession of marihuana and then proceeded to the rear of the Okawa car and, upon searching the unlocked trunk compartment found therein another revolver and another package of a substance resembling marihuana cigarettes. The Okawa car was then driven by Kasparovitch to the vice office located at the police station where it was again searched producing the shotgun herein involved.

Okawa was kept in custody during the investigation for almost forty-eight hours. It was stipulated that no search warrant or warrant for arrest had been issued or sought by the police department prior to these arrests and searches. The foregoing facts are the police officers' version of the facts, which the court finds substantially correct.

The defendant Okawa testified that the automobile in question, while registered in the name of the defendant's brother-in-law, was in the defendant's exclusive possession as sole bailee and all articles therein were the property of and under the sole control of the defendant both on October 8 and October 10; Okawa also testified, in part in direct conflict with Sergeant Howell's testimony, that Okawa was not arrested at the time his car was stopped, but that the police just grabbed him and searched him; that Okawa had been eating at the Donald Duck Drive-in on October 10 just before the arrest, and with the friend who was the driver, got into the car, drove off and was stopped by the police, that one of the officers grabbed him and searched him, taking away his parking keys; that he asked the officer what it was all about and the officer told him he would find out later; that Okawa asked for a warrant and the officer said he didn't need one, shoved him against a fence and searched him; that Okawa had at no time given the officers any permission to search him or the vehicle and that they handcuffed Okawa immediately after they stopped his car. For the purposes of the motion the defendant admitted in his testimony, that in the course of the search the officers had found a model 37 Winchester shotgun that Okawa had bought, and that they had found marihuana in the glove compartment of his car.

It appears to be the contention of the defendant that he was not arrested prior to the search, and that there was no probable cause to stop and search him and the car on October 10, 1960 without a warrant. The defendant cites the cases of Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, and Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, in support of his contention. Neither of these cases is applicable under the facts of this case, which were much more definite, identified the defendant unmistakably upon eye-witness information of a fellow police officer and further justified the search as an incident to a lawful arrest.

On the other hand, the government claims a double-barrelled reason to justify the search and the seizure of the evidence, namely that the police had positive eyewitness evidence from one of their own officers, Castello, of unlawful dispensing of marihuana on October 8 and had the right to, and did, arrest the defendant on October 10 for that offense; and that, upon such arrest and incidental thereto, they had the right to search the defendant and the car; the government also contends that there was sufficient evidence, even in the absence of arrest

for the October 8 offense, justifying a search and seizure.

The court believes that the testimony of the police officers generally is more credible than the defendant's, and indicates that an arrest for the October 8 offense was made immediately upon the defendant's car being stopped. The testimony of the defendant himself is to the effect that he was handcuffed immediately upon his getting out of the car and before any search of the car, the search of his person and thereafter of the car with the keys taken from him apparently occurring immediately after the handcuffing. This testimony together with all the other testimony of the police officers, which the court finds to be credible, indicates most strongly an immediate arrest of the defendant preceding the search.

■ It is probably true that the police believed and expected to find firearms and marihuana in the car and that they waited until the defendant got into the car so that they could, with clearer justification, search the car after the arrest, but none of these facts, in the court's opinion, prevents the arrest for the October 8 offense from being legal, and, if it was legal, as this court finds, then the search of the defendant's person and the car immediately thereafter and in front of the vice squad's office was justified and legal.

■ Taking up, now, the second position of the government's double-barrelled claim of justification, it seems clear to the court that the police officers, basing their action upon Officer Castello's first-hand eyewitness information, had probable cause to believe that on October 10, 1960 the defendant was illegally carrying firearms and marihuana in his automobile. The court bases this view upon the following facts and inferences, which the court believes could reasonably be drawn therefrom: Officer Castello saw, on October 8, the defendant twice unlock the glove compartment with a key and remove therefrom two revolvers and a package of marihuana from which he gave Officer Castello a portion. Even though Officer Castello did not remember Okawa on each occasion had put the articles back in the compartment, a reasonable person would be justified in inferring, from such careful actions, that the defendant would continue to keep the glove compartment locked and would be likely to put back into the compartment and keep there under lock and key the revolvers and marihuana that he had originally removed therefrom.

It must be remembered that defendant had been under surveillance as a suspected narcotic dispenser for some months by the same police officers and his actions on October 8 in rolling up cigarettes with cigarette paper, handing one each to his friend and to Officer Castello and then dropping off at a designated place and having them drive away, all were suspicious actions which, in the light of his suspected activities and actual overt acts, would justify an ordinary man in believing that he was in the business of dispensing this type of narcotics, if not illegally selling firearms. Moreover Okawa's being found at the Donald Duck Drive-in following the interlude of having his friend drive Castello to the same drive-in for coffee would have some tendency to indicate that the Donald Duck Drive-in was a regular hangout of the defendant. These facts, in combination with the facts that the same previously identified automobile was used, that a "friend" (as was the case on October 8) was driving the car on October 10 (although the evidence does not show whether it was the same friend or not), all produce an impression which the court finds would justify a reasonable man in believing that, on October 10, 1960, when picked up, the defendant had in his car in the glove compartment thereof marihuana and firearms or, at least, marihuana.

The court therefore finds that there was probable cause for a search independent of any arrest.

There is a further possibility that the unusual situation of the defendant's exclusive operation, over a period of months, of an automobile registered in his brother-in-law's name might be a part of a pattern of suspicious actions (perhaps with an eye to the possible forfeiture of property used for illegal transportation of narcotics), which could be considered a further ingredient in establishing probable cause, but the court's ruling would be the same without this additional circumstance.

The court therefore finds for the government on both grounds of justification and denies the motion of the defendant.