THE PEOPLE OF THE STATE OF COLORADO *v.*
ROGER WOLCOTT HENRY.

No. 24898.

THE PEOPLE OF THE STATE OF COLORADO *v.*
STEPHEN WOLCOTT HENRY.
(482 P.2d 357)

Decided February 16, 1971.

WORTH F. SHRIMPTON, District Attorney, JOHN L. BAKER, Deputy, for plaintiff-appellee.

ROBERT L. PITLER, for defendant-appellants.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THESE are interlocutory appeals by defendants charged with unlawful possession of marijuana. They seek review of a ruling of the trial court which denied a motion to suppress evidence.

The defendants occupied a cabin near Grand Lake. A district attorney's investigator, Henderson, met a man named Sawyer at the office of the deputy district attorney in Granby on the evening of March 27, 1970. Henderson and Sawyer were not acquainted with each other, although Henderson had seen Sawyer in the Grand Lake area previously. Sawyer told Henderson that earlier in the day he had been in the Henry cabin, that the Henry brothers possessed marijuana, some of which had been smoked during that visit, and that he, Sawyer, had been invited to return and was given permission to bring a friend. Henderson became the "friend" under the assumed name of "Tony."

Law enforcement officers secreted themselves in the area of the Henry cabin that night. Sawyer and Henderson went to the cabin and were admitted by Roger Henry. One Esther Altepeter was in the room into which they were admitted. Roger served wine to Sawyer and Henderson. Roger and Henderson discussed drugs for a while, and then Roger produced a bowl, covered by a paper plate, and cigarette papers. Roger rolled two cigarettes, using the contents of the bowl, which were recognized by Henderson as "manicured" marijuana. Roger gave one of the cigarettes to Sawyer and appeared to be about to give the other to Henderson when the officers on the outside were heard approaching. As the other officers were about to enter Henderson placed

Roger under arrest, and as soon as the officers had entered he also placed Esther under arrest.

Stephen Henry was asleep upstairs. Henderson and another officer then proceeded upstairs to arrest Stephen. While they were going up the stairs Esther dumped the contents of the bowl into the fireplace. Stephen was awakened and arrested. Before leaving with the prisoners Henderson took the bowl, the paper plate, an ash tray containing cigarette ashes, and a jar which was on a bookcase shelf, which, according to Henderson, contained marijuana.

The evidence was conflicting as to whether or not the jar was in plain view. Henderson testified that it was. The court made the finding that it was. Under the circumstances, the finding will not be disturbed since it is based on competent evidence.

After the prisoners had been placed in jail, the deputy district attorney prepared an affidavit which Henderson executed. Henderson drove to Steamboat Springs and on the basis of the affidavit obtained a warrant to search the Henry cabin. The cabin was then searched. By this time it was 7:30 or 8:00 a.m. of the following day. Marijuana and articles connected with drug use were found in the search.

## I.

The primary argument for the defendants is as follows: (1) Because Henderson proceeded to the cabin with the intention of observing narcotics activity, and making arrests if he did so observe, his entry onto the premises constituted an illegal search; (2) the arrest of the defendants was without probable cause because the facts constituting probable cause are the fruits of Henderson's illegal search; (3) the seizure of items "incident to arrest" was illegal because the arrest was illegal since the search was illegal, and also because the items were not in plain view; and (4) the subsequent search of the premises pursuant to warrant was illegal because the warrant was issued without probable cause, since the

original search which started the whole sequence was illegal, and everything learned subsequently was "fruit of the poisonous tree."

■ The fallacy in this argument is that the initial seizures were an incident of the arrest — not a search — and the arrest was by reason of Roger's commission of a crime in Henderson's presence, *i.e.*, the possession of marijuana. The visit of Henderson to the Henry cabin at the invitation of the defendants cannot be said to be a search. *People v. Greathouse*, 173 Colo. 103, 476 P.2d 259 (1970).

Rather, the question is whether any constitutional right of the defendants was violated by the ruse practiced by Henderson, thereby invalidating the arrest. The only mention of constitutional rights in any of the briefs is contained in the defendants' opening brief. Here it is argued that this was an unlawful search under the fourteenth amendment of the United States Constitution. As already indicated, we are not concerned with a search, but rather with an arrest. If the arrest is valid, there can be no question that the initial seizure of articles was incident to that arrest and likewise valid. If the arrest was invalid, so was the seizure.

We have considered whether the arrest was invalidated by the provisions of U.S. Const. amend. IV (as made applicable by U.S. Const. amend. XIV) and its counterpart of Colo. Const. art. II, § 7. In other words, under these provisions were the rights of the defendants to the security of their home and not to have their privacy invaded violated by the deception practiced by Henderson? These provisions, of course, require probable cause for an arrest; but there is no question here about probable cause. The reason that these constitutional provisions may be important is because of the portions thereof which protect individuals in the security of their homes. Was a right of privacy violated by Henderson and, if so, did that invalidate the arrest?

Our attention has not been called to any case in which

an arrest made by reason of observed violation of law has been declared invalid because of the fact that the arresting officer was invited into a home under a misapprehension of his identity by the home's occupant, which misapprehension was known to the arresting officer. There was an analogous situation in *Hoffa v. United States,* 385, U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). There, an associate of the defendant was invited into the defendant's hotel room, the defendant not knowing that the associate was acting as an undercover agent in making the visit. The question was whether incriminating statements made by the defendant under those circumstances were admissible in evidence. It was there stated as follows:

"Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrong doer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. Indeed, the Court unanimously rejected that very contention less than four years ago in *Lopez v. United States,* 373 U.S. 427."

If pretense of this kind does not render prejudicial statements inadmissible, certainly the same sort of pretense would not invalidate an arrest.

The defendants urge *Wilson v. People,* 156 Colo. 243, 398 P.2d 35 (1965), as authority for their position. There, police officers, acting without a warrant, heard someone running when they arrived at an apartment, broke down the door, and conducted a search. That is an entirely different situation than the instant one and, besides, the question of search and not arrest was involved. In *Wilson* the arrest followed the search. The People have cited *Patterson v. People,* 168 Colo. 417, 451 P.2d 445 (1969). There the defendant, not knowing his invitee was a sheriff, invited him to his home as a possible purchaser of stolen merchandise. It was held that, when one opens his home to the transaction of business and invites another to come and trade with him, he breaks

the seal of sanctity and waives his right to privacy. While *Patterson* is not controlling, we do find it somewhat analogous and supportive of the result here.

■ We hold that there was a valid arrest and, the articles having been seized incident to that arrest, the court correctly denied the motion to suppress with respect to those articles.

II.

■ It is argued that the arrest of Stephen Henry was without probable cause. This is a subject which may not properly be considered under a motion to suppress, and cannot properly be the subject of an interlocutory appeal. Crim. P. 41 and C.A.R. 4.1. *See People v. Thornburg,* 173 Colo. 230, 477 P.2d 372 (1970).

III.

■ With respect to the articles seized upon execution of the search warrant, the defendants argue that this was the fruit of an illegal search and that it was not based upon probable cause. We have already disposed of the "poisonous tree" matter. The facts recited in Henderson's affidavit, upon which the search warrant was predicated, were sufficient. There is no merit in the argument that the affidavit did not contain *all* of the facts observed and heard by Henderson while in the cabin.

IV.

■ The search warrant was addressed to "Any person authorized by law to execute warrants within the State of Colorado." While in the warrant Henderson was named as the affiant, the warrant did not contain the name of the officer who would execute it. The defendants call attention to the fact that under the provisions of 1965 Perm Supp., C.R.S. 1963, 48-5-11(3), the name of the officer must be designated. However, after defendants filed their brief here, we declared that statute unconstitutional in *People v. Leahy,* 173 Colo. 339, 484 P.2d 778. It is only necessary for the warrant to comply with the provisions of Crim. P. 41. We hold that the

direction contained in this warrant complied with that rule.

## V.

When asked about the capacity under which he acted in making the initial visit to the Henry cabin, Henderson stated that he was acting in the capacity of investigator for the district attorney. The defendants argue that a district attorney's investigator is not an officer authorized by law to execute warrants. The People have responded by stating outside the record that the public records of Grand County, Colorado, (in which county the cabin was located) disclosed that at the time Henderson was also a deputy sheriff. We resolve the matter on a third basis. We find nothing in the record which states directly the capacity under which Henderson was acting when he executed the warrant on the day following the visit. The record discloses that in Henderson's Return and Inventory made following the execution of the warrant he recited that he had "duly executed the within Search Warrant. . . ." This alone justifies an inference and finding that he was authorized by law. It thereupon became incumbent upon the defendants to show that he was not. This they failed to do.

## VI.

The warrant authorized a search for "narcotics, dangerous drugs, and narcotics paraphernalia." The defendants contend that marijuana is not really a narcotic and, therefore, is not embraced within the quoted language. C.R.S. 1963, 48-5-1 (14)(a) classifies cannabis (marijuana) as a narcotic drug. First *People v. Stark and Peacock,* 157 Colo. 59, 400 P.2d 923 (1965), and then *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969), held that this was a valid and constitutional classification. These cases now represent the law in Colorado. We think it follows that the word "narcotics" included marijuana, and the seizure of marijuana was authorized under the warrant.

■ Also, it is significant that in the warrant, the court set forth some of the facts certified by Henderson concerning the "bowl of manicured marijuana" and the "jar of green leafy material which he believes is marijuana." The defendants further assert that the warrant is invalid for the reason that the words "narcotics, dangerous drugs, and narcotics paraphernalia" are too general and should not embrace all of the articles seized. We see no need to detail all of the articles seized. Accordingly, we dispose of the matter by the statement that, under the test of *People v. Schmidt*, 172 Colo. 285, 473 P.2d 698 (1970), the warrant is not too general. Specifically, we hold that the term "narcotics paraphernalia" is not so vague as to make the document a general warrant.

VII.

The defendants present the argument that the wording of the search warrant did not authorize the seizure of certain articles. Before giving our ruling in this respect, it is deemed well to make some statements concerning this facet of the law of search and seizure. Lawyers and judges are bound to find some confusion and uncertainty when attempting to reconcile rulings such as are contained in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *Gurleski v. United States*, 405 F.2d 253 (1968); *United States v. La Vallee*, 391 F.2d 123 (1968); *Aron v. United States*, 382 F.2d 965 (1967); *United States v. Eisner*, 297 F.2d 595 (1962); *United States v. McDonnell*, 315 F. Supp. 152 (1970); and *United States v. Robinson*, 287 F. Supp. 245 (1968).

Studied treatment of the subject was given in *Hernandez v. People*, 153 Colo. 316, 385 P.2d 966 (1963), and *United States v. McDonnell*, 315 F. Supp. 152 (1970).

Without necessarily approving all that was said in *McDonnell,* we are favorably impressed by one test there set forth which is in effect as follows: The evidence in itself or with facts known to the officer prior to the search, excluding any facts subsequently developed, provided a connection between the evidence and criminal activity. The questions are whether there was a connection with criminal activity and, as to some articles, the *nature* of the criminal activity.

.The court made only a general finding:

"that the items seized and the search made pursuant to the issuance of said search warrant, were validly and legally seized and that said search was legal; that the property and items were sufficiently described in said search warrant."

*Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), upheld the validity of seizure of fruits of a crime, instrumentalities of a crime and contraband articles. We here refer to such items as "Harris articles." *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), refers to "mere evidence," *i.e.,* articles which are not fruits, instrumentalities, or contraband, and which are not *per se* associated with criminal activity, but which the officer executing the warrant has probable cause to believe are associated with criminal activity. An example of "mere evidence" might be a diary containing an exposition of criminal activity.

■ The first item listed in the Return and Inventory was a "Black Zipper Kit and contents." Henderson testified that the contents consisted of hypodermic needles and needle holders. The second item was a Tan Kiwi Shoe Shine Kit and contents. He testified that these contents were smoking pipes, some being corn cob pipes, and that he had had them analyzed. He was not asked the result of the analysis. The third item was "Leather pouch and contents." According to Henderson the contents were cigarette papers. These items were "Harris articles" and the court was obviously correct in denying

534

the suppression motion with respect to them. The nature of most other items seized was similar to the above examples. We do not disapprove the general finding with respect to them.

Some items, however, were "mere evidence." For example the last three items were:

"Blue three ring notebook with loose leaves inside."

"Tan three ring loose leaf binder notebook with loose leaves inside."

"Bound cardboard bound notebook with 'Esther Altepeter' on front."

We find nothing in the record describing any of the contents of these books and do not know whether the trial court examined them. As with respect to the kits and pouch already mentioned, it is the *contents* which are material. When a defendant demonstrates that an article is not specifically described in the warrant, and when it is not *per se* connected with criminal activity, the burden of showing that it is so connected falls upon the People. As to the kits and pouch and their contents, there was testimony by Henderson which was sufficient to show this requisite connection. However, by not placing the contents of the books in the record and demonstrating that these contents were connected with the alleged criminal activity of the defendants, the prosecution failed to sustain its burden. It will be necessary, therefore, for the court to conduct a further hearing with respect to articles seized which were not specifically described in the warrant and which either were not connected with criminal activity *per se* or subject to proof establishing that connection; and the court should make specific findings with respect to such items. *People v. Reyes,* 173 Colo. 301, 477 P.2d 790 (1970).

Two questions arise here as to "mere evidence," an example being the books: whether the "criminal activity" must appear to be that of a defendant, and whether the "criminal activity" must be involved in the case in which the motion to suppress is filed.

 We are of the opinion that, when we approve the failure to suppress the "Harris articles" seized in compliance with *Harris, Hernandez,* and *McDonnell,* we have gone as far as the constitution permits. Therefore, we hold that "mere evidence" which is seized within the scope of the search authorized by the warrant must be shown to have a nexus with the case in which the motion to suppress is filed and with at least one of the defendants in the case.

## VIII.

 Another contention of the defendants is that the warrant was fatally defective because it did not specify when it was to be executed. Originally Colo. R. Crim. P. 41(c) provided:

"The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time."

Since it was amended effective October 1, 1969, the rule merely reads, "The warrant may direct that it be served at any time." Crim. P. 41(c). Historically, there has not been a question about executing a search warrant during the daytime. The problem has arisen in the execution of a warrant at night when the warrant did not specifically so authorize such execution. *See Annot.,* 26 A.L.R.3d 951 (1969). It may be that the quoted portion of the present rule does not make a limitation on service of a warrant at night when it does not specify that it may be served at any time or that it may be served at night. However, we do not need to make this determination now. We simply hold that under the present rule when a search warrant, as here, does not specify the time at which it is to be served or that it may be served at any time, its validity is not affected, and it may be executed in the daytime. This search commenced at 7:30 or 8:00 a.m. on March 28. Without question this would be in the daytime.

### IX.

We do not find merit in the other arguments submitted by the defendants.

The trial court is directed to hold a hearing and make findings in accordance with our discussion under VII above, and to enter its order with respect to suppression consonant with such findings. Otherwise, the judgment of the trial court is affirmed.