637 P.2d 384 (1981)
The PEOPLE of the State of Colorado, Plaintiff-Appellant,
v.
Jay STOPPEL, Defendant-Appellee.
No. 81SA248.
Supreme Court of Colorado, En Banc.
December 7, 1981.
*386 Alexander M. Hunter, Dist. Atty., Twentieth Judicial Dist., Peter Michael Maguire, Deputy Dist. Atty., Boulder, for plaintiff-appellant.
Gehler & Cohen, Patrick D. Williams, Commerce City, for defendant-appellee.
ERICKSON, Justice.
This is an interlocutory appeal by the prosecution from a ruling of the trial court which granted defendant's motion to suppress certain items of evidence relating to a bombing incident. We reverse the ruling of the trial court which suppressed evidence seized in the search of the defendant's residence, and remand for further proceedings consistent with this opinion.
The evidence at the suppression hearing established the following sequence of events. On October 24, 1980, the Longmont Police Department received a report of an incident wherein the defendant, Jay Alan Stoppel, harassed Mary Ann Glaser and Michael Holland. During the subsequent police investigation, Holland reported that he had participated with Stoppel in the bombing of a Longmont residence on June 19, 1980. Holland described the construction and placement of the bomb in detail, and his description was later corroborated by the reports of the police investigation of the bombing. Holland also reported that he, Stoppel, and Brad Weber had detonated the same type of explosive device on an abandoned vehicle on April 12, 1980. The details of the vehicle bombing were also corroborated by the police reports of that incident, and by a subsequent police interview of Weber. In addition, Glaser reported to the police that, within the previous several months, she had observed Stoppel, Holland, and Weber making explosive devices.
Both Holland and Weber agreed to assist the police, as informants, in their investigation of Stoppel's bombing activities. At the request of the police, Holland and Weber visited the defendant and observed marijuana plants, marijuana fray, and drug paraphernalia at his residence. After leaving the defendant's residence, Holland and Weber were each questioned separately by the police. On the basis of their observations and conversation with Stoppel during the visit,[1] the Longmont Police Department prepared an affidavit for a search warrant. Thereafter, the Boulder District Court issued a warrant to search Stoppel's residence for marijuana and other drug-related items. At that time, the court also issued a warrant for Stoppel's arrest for felony menacing,[2] felony criminal mischief,[3] first degree arson,[4] and two counts of possession and use of explosives or incendiary devices.[5] The *387 arrest warrant and accompanying affidavit did not contain any drug-related charges or allegations.
During the execution of the arrest and search warrants on October 28, 1980, police officers recovered several marijuana plants, marijuana fray, and various items of drug paraphernalia from Stoppel's residence. While conducting the search for drugs, the police also discovered evidence relating to bombing activities, including safety fuses, ignitor squibs, and two handbooks pertaining to the manufacture of explosive devices. At first, the officers did not seize the bombing-related items, but secured the residence after arresting Stoppel and seizing the drug-related items. Later the same day, the police obtained a second search warrant, and returned to Stoppel's residence to seize the evidence relating to the bombing incidents.
Thereafter, the prosecution filed an information charging Stoppel with felony criminal mischief, first degree arson, and one count of unlawful possession and use of explosives or incendiary devices.[6] No charges were filed against Stoppel for menacing, harassment, or drug-related activities. Stoppel entered pleas of not guilty to all charges and, after probable cause was found at a preliminary hearing, the matter was set for trial.
The defendant filed a Motion to Suppress, which alleged that the affidavit for the first search warrant failed to present sufficient evidence regarding the reliability or identification of the source of the information to establish probable cause that the drug-related items described were located in his residence. Further, the defendant alleged that the first search warrant was a sham requested solely for the purpose of obtaining entry into his residence to gather evidence of the bombing activities. The trial court found in favor of the defendant on both issues and suppressed all evidence seized at the search of the defendant's residence on October 28, 1980.
The prosecution filed an interlocutory appeal, urging: (1) that the affidavit for the first search warrant was supported by sufficient information to establish the reliability of the information or the credibility of the informants; and (2) that the search of the Stoppel residence was not a subterfuge designed to allow the police to enter and search for incendiary devices. We agree and, for the reasons set forth in this opinion, we reverse the trial court.

I.
We first address the issue of the sufficiency of the affidavit for the first search warrant. In our view, the affidavit provided sufficient information to determine the credibility of the informants. Accordingly, we hold that the affidavit was sufficient to support a finding of probable cause for the issuance of the first search warrant and that the initial search for drugs was valid.
An affidavit based upon information derived from an informant must satisfy a two-prong test to establish probable cause for the issuance of a search warrant. First, the affidavit must allege facts from which the issuing judge can independently determine whether there are reasonable grounds to believe that illegal activity is being carried on in the place to be searched. Second, it must set forth sufficient facts to allow the judge to determine if the informant is credible or the information reliable. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See also, People v. Peschong, 181 Colo. 29, 506 P.2d 1232 (1973); People v. Baird, 182 Colo. 284, 512 P.2d 629 (1973); People v. Brethauer, 174 Colo. 29, 482 P.2d 369 (1971). See generally 1 W. LaFave, Search and Seizure § 3.3 (1978).
Information provided as a result of personal observations of an informant is sufficient *388 to satisfy the first requirement, or the "basis of knowledge" test. See People v. Clark, 175 Colo. 446, 488 P.2d 565 (1971); People v. MacDonald, 173 Colo. 470, 480 P.2d 555 (1971). See also People v. Harris, 182 Colo. 75, 510 P.2d 1374 (1973). The record in this case clearly indicates that Holland and Weber both told the police they personally observed Stoppel growing and using marijuana in his home at a specific and recent time. Accordingly, we conclude that the first prong of the Aguilar-Spinelli test was satisfied by the allegations in the affidavit that the informants had witnessed Stoppel's criminal activity. See People v. Montoya, 189 Colo. 106, 538 P.2d 1332 (1975); People v. Montoya, Colo.App., 616 P.2d 156 (1980); People v. MacDonald, supra.
The second prong of the Aguilar-Spinelli test requires that the affidavit for the search warrant establish the credibility of the informant or the reliability of the information. One method of demonstrating informant credibility is by the use of collateral corroboration of information. See People v. Clark, supra; People v. MacDonald, supra. In this case, each informant independently corroborated the information that the other gave to the police. Although both Holland and Weber observed marijuana plants in the defendant's bedroom, and marijuana fray and drug paraphernalia in the living room, each gave detailed, independent accounts to the police regarding the location and nature of the drug-related items in Stoppel's residence.[7] In addition, the information of both informants was corroborated by collateral information in the subsequent police investigation of Stoppel's drug-related activities. The conversation taped by Holland during the visit he and Weber made to Stoppel's residence revealed that Stoppel discussed the possibility of removing the marijuana plants from his residence because of his concern that Glaser might call the police. Such information was independent of that provided by Holland's and Weber's personal observations. Consequently, we conclude that the affidavit provided sufficient information to determine the credibility of the informants through independent corroboration.
Declarations against the penal interests of informants may also establish informant credibility in an affidavit for a search warrant. Even if the informants were granted freedom from prosecution for their assistance to the police, the admissions of crime carry their own indicia of credibility sufficient to support a finding of probable cause to search:
"Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility ... sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a `break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
See also People v. Trontell, 188 Colo. 253, 533 P.2d 1124 (1975); DeLaCruz v. People, 177 Colo. 46, 492 P.2d 627 (1972). In this case, both Weber and Holland made declarations against their penal interests which were included in the affidavit for the issuance of the first search warrant. Weber told the police that he had smoked two "bongs" of marijuana during his visit to the Stoppel residence with Holland. Holland reported to the police his participation with Stoppel in the manufacture of explosive devices, the destruction of the abandoned vehicle, and the bombing of the residence on June 19, 1980. Moreover, both informants were specifically identified by name and address in the affidavits; the "residual risk and opprobrium" of their declarations *389 against penal interests are correspondingly greater than if they had not been so identified. See People v. Trontell, supra. Consequently, we conclude that the affidavit provided sufficient information to establish the credibility of the informants on the basis of their declarations against penal interests.
Therefore, at the time the first search warrant was signed, the reviewing judge had sufficient information within the four corners of the affidavit to find that both prongs of the Aguilar-Spinelli test had been met. See generally Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); People v. Padilla, 182 Colo. 101, 511 P.2d 480 (1973); People v. Goggin, 177 Colo. 19, 492 P.2d 618 (1972). Accordingly, we hold that the affidavit was sufficient to support a finding of probable cause for the issuance of the first search warrant and that the initial search for drugs was therefore valid.

II.
We next address the issue of whether the initial search of the Stoppel residence was a subterfuge designed to allow the police to enter and search for items relating to the bombing incidents. After arresting Stoppel and seizing the items recovered as a result of the execution of the search warrant for drugs, the police prepared another affidavit and obtained a second search warrant for the evidence relating to the bombing activities which was discovered during the drug search. Defendant contends that discovery of the items relating to the bombing incidents was not inadvertent and that the drug search was therefore converted into a general exploratory search. We disagree. In our view, since probable cause did not exist to obtain a search warrant for the evidence relating to the bombing activities, the discovery of those items, while executing a valid search warrant, was inadvertent, and permitted seizure pursuant to the plain view exception to the warrant requirement. Further, we find no indication in the record that the police acted in bad faith. We therefore conclude that the initial drug search was not a sham. See United States v. Williams, 622 F.2d 830 (5th Cir. 1980).

A.
Warrantless seizures of evidence are presumptively invalid under the Fourth Amendment of the United States Constitution and under Art. II, sec. 7 of the Colorado Constitution. Under certain circumstances, however, the police may effect warrantless seizures of evidence in plain view. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); People v. Gurule, 196 Colo. 562, 593 P.2d 319 (1978). See generally 1 W. LaFave, Search and Seizure § 2.2 (1978). The rationale behind the plain view exception to the warrant requirement is that, where the police inadvertently come upon evidence during the course of an otherwise lawful search, it would be a needless inconvenience and possibly dangerous to require a warrant for the seizure of such evidence. Coolidge v. New Hampshire, supra. Further, there is no expectation of privacy in objects in plain view. See e.g., People v. Gurule, supra. Therefore, when the police are legitimately on the premises, they are not required to close their eyes to incriminating evidence plainly visible to them. They may seize the objects sought as well as other incriminating evidence which is in plain view. People v. Torand, Colo., 622 P.2d 562 (1981). See also Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); People v. Billington, 191 Colo. 323, 552 P.2d 500 (1976).
Three restrictions ensure that plain view seizures are not used as a pretext to avoid Fourth Amendment protections against general warrants and the prior limitative determination of probable cause. The restrictions are based on the premise that "plain view alone is never enough to justify the warrantless seizure of evidence;" it merely serves to supplement a previously justified search. Coolidge v. New Hampshire, supra; People v. Gurule, supra. To be valid, a plain view seizure must satisfy the following requirements: (1) there must be a prior valid intrusion; (2) the discovery *390 of the evidence must be inadvertent; and (3) the officer must have good reason to believe that the exposed item is incriminating, that is, there must be some nexus between the item to be seized and the criminal behavior. See e.g., Coolidge v. New Hampshire, supra; People v. Torand, supra; People v. Harding, Colo., 620 P.2d 245 (1980); People v. Gurule, supra. As discussed in part I of this opinion, the initial search for drugs was valid. Therefore, we hold without further discussion that there was a prior valid intrusion into Stoppel's residence. Further, the defendant concedes that the third requirement, or the nexus between the items to be seized and the criminal behavior, was present. Consequently, the crucial issue before us is whether the discovery of the evidence relating to the bombing activities was inadvertent.
While Coolidge did not specifically define the inadvertence requirement, a reasoned and thorough evaluation appears in United States v. Hare, 589 F.2d 1291 (6th Cir. 1979), which found a close link between the inadvertence requirement and the constitutional limitations of the scope of a search:
"Ordinarily, in the course of an otherwise permissible search, if the police unexpectedly come across evidence, it would be likely to disappear or be destroyed if the police then had to obtain a warrant before seizure. In the words of Coolidge, `as against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement' if seizure is permitted under these circumstances. However, if the police had probable cause to believe they would find the evidence or contraband before making the seizure, and had an opportunity to obtain a warrant, any exigency which results is of their own making, and cannot serve as grounds for a warrantless seizure.
"We conclude, then, that `inadvertence' in this context means that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise-justified search. There are many times when a police officer may `expect' to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. The same exigent circumstances exist, and no warrant could have been obtained before the discovery." Id. at 1294.
Hare recognizes the significant practical limitations that would result from an interpretation that "inadvertent" means "unexpected:"
"If `inadvertent' is interpreted as `unexpected', an absurd scenario would take place every time the police execute a search warrant on the premises of a person suspected of engaging in a variety of criminal activities, but when they have probable cause (and a warrant) to search for the fruits of only one crime. In such a case, whenever evidence of one of these other crimes turns up, even though it would have been impossible to obtain a warrant previously, someone must be sent to obtain a new warrant to authorize the seizure." Id. at 1295.
We adopt the Sixth Circuit's definition of "inadvertence." In our view, so long as the police do not have probable cause to believe the evidence in plain view would be present, and the evidence is observed in the course of an otherwise justified search, the inadvertence requirement is met. Accord, United States v. Ortega, 644 F.2d 512 (5th Cir. 1981); United States v. Cutts, 535 F.2d 1083 (8th Cir. 1976); United States v. Welsch, 446 F.2d 220 (10th Cir. 1971); State v. Clark, 592 S.W.2d 709 (Mo.1979); State v. Davenport, 510 P.2d 78 (Alaska 1973). See generally C. Whitebread, Criminal Procedure § 11.03 (1980); 2 W. LaFave, Search and Seizure § 4.11 (1978).
*391 Defendant contends that Holland's testimony at the suppression hearing established that the police officers had knowledge of the whereabouts of the bombing-related items sufficient to obtain a search warrant for those items. We disagree. Although the police may have had some suspicion that evidence relating to the bombing activities might be in Stoppel's residence,[8] probable cause was not established to obtain a warrant for such items until they were observed in Stoppel's residence during the drug search. Holland's testimony indicated that he had observed the bombing-related items at Stoppel's residence about a month or within the month prior to October 1980:
"DEFENSE COUNSEL WILLIAMS: When was the last time you had been over at Mr. Stoppel's and had observed the [bombing-related items], approximately, to the best that you can estimate, prior to October of 1980?
"HOLLAND: Probably in September. I'm not sure of the exact date.
"WILLIAMS: About a month or within a month earlier?
"HOLLAND: Yes."
The grounds in an affidavit for a search warrant must have a relationship to the date and the time that the warrant is issued. See, e.g., People v. Erthal, 38 Colo. App. 245, 556 P.2d 1228 (1976), aff'd People v. Erthal, 194 Colo. 147, 570 P.2d 534 (1977). As a result, any knowledge which Holland might have reported to the police relating to the evidence of bombing activities was stale and would have been insufficient to provide probable cause for the issuance of a search warrant for such items on October 28, 1980. See section 16-3-303(1)(d), C.R.S. 1973 (now in 1978 Repl. Vol. 8); People v. Erthal, supra; People v. Schmidt, 172 Colo. 285, 473 P.2d 698 (1970). We therefore conclude that the police did not have preexisting knowledge of the identity and location of the evidence relating to the bombing activities sufficiently in advance of the initial search of Stoppel's residence to permit a search warrant for those items to be issued. See United States v. Welsch, 446 F.2d 220 (10th Cir. 1971).
Accordingly, the discovery of the evidence relating to the bombing activities was inadvertent and could therefore be lawfully seized pursuant to the plain view exception to the warrant requirement.

B.
We disagree with defendant's contention that the police officers obtained the initial drug-related search warrant only to conduct a general exploratory search for the bombing-related items. We can find no indication in the record that the police officers acted in bad faith or in an illegal manner in preparing the affidavit or conducting the initial search of Stoppel's residence.[9] In fact, the record indicates that, following the drug search, the police prepared an additional affidavit and obtained a second search warrant to retrieve the evidence relating to the bombing activities which they discovered during the drug search. Since the plain view seizure of the bombing-related items was constitutionally permissible, however, the second search warrant was unnecessary and was merely an attempt to ensure that Stoppel's Fourth Amendment rights were not violated.
Further, defendant's contention that the police acted in bad faith because the officers did not file any drug-related charges against Stoppel is without merit. The determination of the charges against a defendant is made by the district attorney and not the police. Only misdemeanor charges may be filed by the police; the decision whether or not to file felony charges is made by the district attorney. See Crim.P. 3; Crim.P. 7. See also ABA, *392 Standards Relating to the Prosecution Function § 3-3.4 at 3.44 and 3-3.9 at 3.53. We therefore conclude that the initial drug search was not a sham and that the filing of charges by the district attorney was within the zone of prosecutorial discretion.
Accordingly, we reverse the ruling of the trial court and remand for further proceedings consistent with this opinion.
ROVIRA, J., concurs in all portions of the Court's opinion except Part IIA as to which he concurs in the result only.
NOTES
[1] The conversation between the informants and the defendant was recorded by a tape recorder concealed in Holland's pocket during the visit.
[2] Section 18-3-206, C.R.S. 1973 (1978 Repl. Vol. 8).
[3] Section 18-4-501, C.R.S. 1973 (1978 Repl. Vol. 8).
[4] Section 18-4-102, C.R.S. 1973 (1978 Repl. Vol. 8).
[5] Sections 18-12-109(2) and (4), C.R.S. 1973 (1978 Repl. Vol. 8).
[6] The defendant was charged with felony criminal mischief, in violation of section 18-4-501, C.R.S. 1973; first degree arson, in violation of section 18-4-102, C.R.S. 1973; and unlawful possession and use of explosives or incendiary devices, in violation of section 18-12-109(2), C.R.S. 1973.
[7] Even before the two informants visited Stoppel's residence, both informants corroborated the information that the other had given to the police. Holland reported to the police that he had previously observed marijuana plants and drug-related items at Stoppel's residence. Thereafter, Weber contacted the police anonymously to provide information regarding the drugs and drug-related items at Stoppel's residence. After his voice was identified by Holland, who was at the police station at the time of the call, Weber confirmed to the police that he had been the anonymous caller.
[8] Holland's testimony in this regard was largely uncorroborated by that of other witnesses at the suppression hearing, but was contradicted by the testimony of two police officers at the hearing.
[9] Nothing in the record indicates that the drug search warrant was executed in an illegal manner or that the police exceeded the scope of the warrant. The inadvertent discovery of the evidence relating to the bombing activities was consistent with the objectives of the search for marijuana and drug-related items.