**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Ernest L. BUSTAM, Defendant-Appellee.**

**No. 81SA332.**

Supreme Court of Colorado, En Banc.

March 8, 1982.

R. Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

Joseph Saint-Veltri, Emerson B. Semple, Denver, for defendant-appellee.

ROVIRA, Justice.

The defendant, Ernest Bustam, has been charged with possession of narcotic drugs for sale [1] and possession of dangerous drugs with the intent to dispense.[2] The People bring this interlocutory appeal pursuant to C.A.R. 4.1 to challenge the district court's order granting the defendant's motion to suppress evidence and his motion for return of all nondrug related property. We reverse the ruling of the trial court.

The facts are not in dispute. Denver police, working with the assistance of an agent from the Drug Enforcement Administration of the United States Department of Justice, began an investigation of the defendant in the fall of 1980. This investigation was initiated upon information received from a citizen who reported that the defendant occupied an expensive condominium at 800 Pearl Street, but did not appear to have any visible means of support; that he received an unusual number of visitors who stayed a short length of time and who either were dropped off at the apartment

---

1. Section 12–22–322, C.R.S.1973 (1978 Repl. Vol. 5) (this section has since been repealed pursuant to the enactment of the Colorado Controlled Substances Act, sections 12–22–301 to –322, C.R.S.1973 (1978 Repl. Vol. 5 1981 Supp.)).

2. Section 12–22–412, C.R.S.1973 (1978 Repl. Vol. 5) (repealed effective July 1, 1981; L. 81, p. 741, § 39).

building or parked some distance away and walked to the building; and that the defendant made frequent trips to Miami, Florida.

The police concluded that this type of activity corresponded to the typical pattern of activity of one involved in the dealing of narcotic substances. In addition, upon checking police records, the police discovered that the defendant had a prior arrest for sale and possession of narcotics.

Approximately three months after receiving the information from the citizen, an informant with proven reliability notified the police that an individual by the name of Vern Leingang would be going to the area of 8th Avenue and Washington Street for the purpose of purchasing a quantity of cocaine. The informant gave a physical description of Leingang, and the police obtained a photograph of him from police records.

Since the defendant lived one block from 8th Avenue and Washington Street, the police decided to set up a surveillance of his apartment. Police were positioned outside the building and in an apartment directly across the hall from that occupied by the defendant.

At approximately 8:10 p. m., an individual fitting the description of Leingang entered the defendant's apartment. Approximately twenty minutes later, he left the apartment, and the policeman who was stationed in the nearby apartment heard him say, as he was leaving, that he would return in a few minutes. Leingang then entered a vehicle and drove a short distance before being stopped by the police and placed under arrest. A search of his person revealed approximately one-half pound of cocaine.

Immediately thereafter, the police went to the defendant's apartment and entered, using a passkey obtained from the building manager. The defendant was informed that the premises were being secured pending the receipt of a search warrant.

Detective Barnhill drafted an affidavit for a search warrant which, in essence, related the above information. He also stated that while in the process of securing the premises he observed a sifter used in preparing narcotics for use or sale as well as a cardboard box top with several marijuana seeds in it. A county court judge issued a search warrant based upon the affidavit.

The warrant was executed at approximately 11:30 p. m. An inventory of property taken pursuant to the search warrant disclosed that the police seized numerous packages of controlled substances; papers of the defendant showing his residence to be 800 Pearl Street, Apartment 911; a Sony video recorder; and $10,779 in cash.[3] The first item found during the search was a plastic bag of cocaine, and the police immediately advised the defendant that he was under arrest for possession of narcotics and orally advised him of his constitutional rights by giving a *Miranda* advisement.

The defendant moved to suppress evidence and for return of all nondrug related property. He contends that there was an illegal entry into his apartment and, therefore, facts recited in the affidavit relating to items seen in his apartment should not be considered in determining probable cause. Further, he contends that the items seized were not those described in the search warrant, there was no basis upon which to believe the information contained in the affidavit for search warrant, and the search warrant was illegally executed.

A hearing was held, and the trial court granted the motion to suppress. It found that no exigent circumstances justified the warrantless entry into the defendant's apartment and, since the affidavit for the search warrant included facts gained pursuant to the illegal entry, that there was no probable cause to support the issuance of the warrant.

In ruling on the defendant's motion for return of all nondrug related property, the court determined that the video recorder

---

**3.** A detailed inventory of the items taken during the search reflects that the police found cocaine, marijuana, hashish, and narcotic paraphernalia including baggies, scales, and snort tubes.

was properly seized even though it wasn't listed on the search warrant because, during the search, the detectives checked the serial number and found that the recorder had been reported stolen. The court ordered that the cash taken from the defendant be returned to him. We disagree with both of the trial court's rulings except as they relate to the video recorder.

The People contend that the trial court erred because there was probable cause to arrest the defendant, and exigent circumstances justified the warrantless entry to secure the premises and detain the defendant until a warrant could be obtained. The People further contend that the cash was properly seized as a fruit of illegal activity and the defendant is thus not entitled to its return.

■ In order to support the warrantless entry and arrest[4] of the defendant in his apartment, the prosecution must establish the existence of both probable cause and exigent circumstances. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *People v. Williams*, Colo., 613 P.2d 879 (1980); *People v. Coto*, 199 Colo. 508, 611 P.2d 969 (1980); *People v. Moreno*, 176 Colo. 488, 491 P.2d 575 (1971). Probable cause to arrest is established when it is shown that the facts and information within the arresting officers' knowledge are sufficient to cause a "man of reasonable caution to believe that an offense has been or is being committed." *Lucero v. People*, 165 Colo. 315, 320, 438 P.2d 693, 695, *cert. denied*, 393 U.S. 893, 89 S.Ct. 217, 21 L.Ed.2d 173 (1968). *See Michigan v. DeFilippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *People v. Chavez*, Colo., 632 P.2d 574 (1981). *See also* section 16–3–102(1)(c), C.R.S.1973 (1978 Repl. Vol. 8).

■ As we have said on innumerable occasions, facts and information which support a finding of probable cause need not rise to a level of certainty. "In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Lucero v. People, supra*, 165 Colo. at 320, 438 P.2d at 695. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *People v. Brethauer*, 174 Colo. 29, 482 P.2d 369 (1971); *People v. Weinert*, 174 Colo. 71, 482 P.2d 103 (1971); *Gonzales v. People*, 156 Colo. 252, 398 P.2d 236, *cert. denied*, 381 U.S. 945, 85 S.Ct. 1788, 14 L.Ed.2d 709 (1965).

■ In the present case, we conclude that there was probable cause to arrest the defendant. The facts recited above warranted the officers' belief that the defendant had just sold a quantity of cocaine.

■ The existence of probable cause, however, is not enough to support the warrantless entry into the defendant's apartment. A warrantless intrusion into a home is presumptively unreasonable. *See Payton v. New York, supra*. However, it has long been recognized that an otherwise improper warrantless search or seizure may be rendered reasonable if there are exigent circumstances justifying the intrusion. *See Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit of a fleeing suspect); *People v. Williams, supra* (need for prompt arrest to prevent escape and possible destruction of evidence); *People v. Amato*, 193 Colo. 57, 562 P.2d 422 (1977) (police and fire department respond to emergency call). Factors relevant to a determination of exigency include (1) the degree of urgency and the time required to

---

4. Clearly, the defendant was seized within the meaning of *U.S.Const.* amend. IV and *Colo. Const.* Art. II, Sec. 7. Testimony offered by the prosecution at the suppression hearing established that the defendant was detained for approximately two and a half hours and was not free to leave while the search warrant was being obtained. The defendant was "formally arrested" after the search warrant was executed. In light of the nature of the detention, however, it would strain all credulity to hold that the detention of the defendant was anything other than an arrest. *See United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

obtain a warrant, (2) reasonable belief that evidence or contraband would be removed or destroyed, (3) information that those in possession of the evidence or contraband are aware that the police are closing in, and (4) the ease of destroying the evidence or contraband and the awareness that narcotics dealers often try to dispose of narcotics and escape under the circumstances. *People v. Williams*, Colo., 613 P.2d at 882 n. 4, *citing United States v. Rubin*, 474 F.2d 262 (3d Cir. 1973); *People v. Boorem*, 184 Colo. 233, 519 P.2d 939 (1974).

■■■ Here, a warrantless entry into the defendant's apartment was necessary to prevent the possible loss of contraband or an attempt by the defendant to flee. When Leingang left the apartment, he was overheard telling the defendant that he would return in a few minutes. The police knew that Leingang had been arrested and would not be returning to the defendant's apartment. The failure of Leingang to return might have aroused the defendant's suspicion. Under these circumstances, it was reasonable to believe that the defendant expected Leingang to return promptly to the apartment, and his failure to do so could be expected to alarm the defendant, which in turn would likely lead to the destruction of the contraband and an attempt to flee. Given the time of night and the length of time required to obtain a warrant, the prompt entry was justified. *See People v. Williams, supra.* We conclude that both probable cause and exigent circumstances existed, and therefore the entry and arrest were justified.

Having established that the warrantless entry into the defendant's apartment was proper, the contention that the affidavit in support of the search warrant was fatally defective must fail. The defendant's argument is based upon the conclusion that the entry was illegal; therefore, facts obtained pursuant to the entry should not have been included in the affidavit and considered in making the probable cause determination.

The affidavit filed in support of the search warrant recited all facts known to the officer prior to the entry.[5] Under these facts alone, there was probable cause to believe that the items sought would be found inside the apartment. However, the affidavit also contained facts obtained pursuant to the entry. The following two sentences form the entire basis of the defendant's challenge: "During the act of securing your affiant observed a red sifter used in preparing narcotics for use or sale. Your affiant also observed a cardboard box top with several marijuana seeds in it."

■■■ The inclusion of these facts cannot taint the otherwise valid affidavit. It is clear that the police had the right to enter the apartment. Items observed in plain view pursuant to a valid entry may be included in an affidavit for a search warrant. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. Franklin*, Colo., 640 P.2d 226 (1982); *People v. Stoppel*, Colo., 637 P.2d 384 (1981). We note further that the scope of the initial entry was limited to detaining the defendant and securing the premises to prevent loss of evidence or contraband. There is no indication that the police conducted any search until after the warrant had been issued.

The People contend that money seized from the defendant was the fruit of illegal activity and, therefore, the trial court erred in ordering that it be returned to the defendant.

■■■ It is well established that "[w]hen a defendant demonstrates that an article is not specifically described in the warrant, and when it is not *per se* connected with criminal activity, the burden of showing that it is so connected falls upon the People." *People v. Lujan*, 174 Colo. 554, 560, 484 P.2d 1238, 1242 (1971), *quoting People v. Henry*, 173 Colo. 523, 534, 482 P.2d 357, 362–63 (1971). In the present case, the search warrant did not specifically describe

---

5. The affidavit included all of the information found in this opinion, with the exception of the fact that one of the officers overheard Leingang

say, when he left the defendant's apartment, that he would return in a few minutes.

the item seized, and the item is not *per se* connected with criminal activity. Accordingly, the burden of establishing the connection between the money seized and criminal activity is on the People.

The only evidence before the court on this issue consisted of the testimony of Detective Barnhill. He testified that in his experience individuals who deal in narcotics often carry large sums of cash for the purpose of making change in transactions involving narcotics.[6] The trial court found that the People failed to meet their burden of showing the nexus between the money and criminal activity. Therefore, the court ordered that the money be returned to the defendant. We disagree with the ruling of the trial court.

▪ The only evidence presented at the hearing was that offered by the People. A reading of the record supports the conclusion that the People met their burden of showing that the money seized was connected with the defendant's criminal activity. There is no evidence to the contrary. Therefore, we conclude that the trial court erred in ordering that the money be returned to the defendant.

The ruling of the trial court suppressing the evidence seized and mandating that the money found in the defendant's apartment be returned is reversed, and the cause is remanded for further proceedings.

ERICKSON, J., dissents in part and concurs in part, and DUBOFSKY and QUINN, JJ., join in dissent and concurrence.

QUINN, J., dissents in part and concurs in part, and ERICKSON and DUBOFSKY, JJ., join in dissent and concurrence.

---

**6.** Detective Barnhill testified further that the defendant, after being advised of his *Miranda* rights, admitted that the money was his and was obtained as the result of his drug dealing activity. The trial court suppressed the defendant's statements, however, as not having been "truly voluntarily made." In ordering the suppression of the statements, the court relied

ERICKSON, Justice, dissenting in part and concurring in part:

I join Justice Quinn's dissent from the majority opinion because I agree that, under the circumstances of this case, the warrantless entry into the defendant's home cannot be justified under the exigent circumstances exception to the warrant requirement.

I concur in that part of the majority opinion which upholds the sufficiency of the core of the affidavit to establish probable cause for the issuance of a search warrant. In my view, however, it is necessary to set forth precisely how probable cause was established to justify the issuance of the search warrant.

The police investigation which ultimately led to the affidavit for the search warrant was partially based upon the information provided to the police by an unidentified citizen, whose reliability was not established, approximately three months before the search was executed. The citizen advised the police that Bustam, who was living at 800 Pearl Street, apartment 911, in Denver, Colorado, was the recipient of an unusual amount of foot traffic at all hours of the day and night. The affidavit also stated that the visitors to the apartment only stay a short time and are either dropped off or park some distance away and walk up to the apartment building. In addition, the citizen advised the police that Bustam made frequent trips to Miami, Florida, had no visible means of support, and that Bustam's apartment was "of an expensive and exclusive nature." On the basis of this information, the police officer equated Bustam's activities to that of a person dealing in controlled substances.

In my view, the information received from the citizen was insufficient to provide probable cause for the issuance of a search

---

upon the fact that there was no written advisement of rights and the defendant had not been reminded of his right to have counsel present before he answered any questions.

The People do not challenge the court's order. Therefore, this court will not review, *sua sponte*, the standard applied and the conclusions reached by the trial court.

warrant for drug-related items. *Compare Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). A valid search warrant must be executed at a time when there is probable cause to believe that the items to be seized may be found in a particular place. *See, e.g., People v. Stoppel*, Colo., 637 P.2d 384 (1981); *People v. Bauer*, 191 Colo. 331, 552 P.2d 512 (1976); *People v. Padilla*, 182 Colo. 101, 511 P.2d 480 (1973). Information received from an unidentified citizen approximately three months before the search of the defendant's apartment was therefore stale and could not provide probable cause to obtain a search warrant. Moreover, the unidentified citizen providing the information could not satisfy in any way the traditional test for informant credibility or reliability of the information. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See also People v. Stoppel, supra; People v. Baird*, 182 Colo. 284, 512 P.2d 629 (1973); *People v. Brethaur*, 174 Colo. 29, 482 P.2d 369 (1971). The information received from the unidentified citizen provided the police with no more than skeletal information, and the police acknowledged that the information was of untested reliability.

The affidavit also stated that the police received information from a previously reliable confidential informant within the previous 24 hours stating that Leingang would be going to the area of 8th Avenue and Washington Street in Denver for the purpose of purchasing a quantity of cocaine. Although the informant provided a description of Leingang, the vague description of his destination was insufficient to establish probable cause. In my view, the affidavit did not allege facts from which the issuing judge could independently determine that there were reasonable grounds to believe that illegal activity was being carried on in the place to be searched. *See Aguilar v. Texas, supra; Spinelli v. United States, supra; People v. Stoppel, supra; People v. Peschong*, 181 Colo. 29, 506 P.2d 1232 (1973).

I believe that probable cause for the issuance of the search warrant was not estab-lished until the police arrested Leingang and discovered cocaine in his possession after they had observed him enter the defendant's apartment. Only by connecting the facts of the encounter with Leingang to the information previously provided by the informant and the unidentified citizen did the suspicions of the police rise to probable cause to obtain a search warrant.

Justice DUBOFSKY and Justice QUINN authorize me to say that they join in this dissent and concurrence.

QUINN, Justice, dissenting in part and concurring in part:

I dissent from that part of the court's opinion which upholds the initial entry into the defendant's apartment and approves the use of observations acquired in the course of that entry. In my view the warrantless entry into the defendant's home cannot be justified under the exigent circumstances exception to the warrant requirement. However, I believe that when the references to the officer's observations upon the initial entry are excluded from the affidavit, probable cause was established for the issuance of the warrant and the subsequent search and seizure complied with constitutional principles.

I.

The predominant lesson to be learned from Fourth Amendment jurisprudence is that the warrantless entry into a home to arrest, search or seize is presumptively invalid. *E.g., Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be

secure in their ... houses ... shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Payton v. New York, supra*, 445 U.S. at 589–90, 100 S.Ct. at 1381–82, 63 L.Ed.2d at 653.

Only when there is an appropriate showing of an emergency may governmental officers cross the threshold of a home without a warrant. *See, e.g., United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). We recently summarized the type of emergencies encompassed by the exigent circumstances exception in *McCall v. People*, Colo., 623 P.2d 397 (1981):

> "Exigent circumstances justifying a warrantless arrest generally have been limited to those situations involving a *bona fide* pursuit of a fleeing suspect, *e.g., Warden v. Hayden* [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) ]; *United States v. Scott*, 520 F.2d 697 (9th Cir. 1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), or the risk of immediate destruction of evidence, *e.g., United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *People v. Williams*, Colo., 613 P.2d 879 (1980), or a colorable claim of emergency threatening the life or safety of another, *e.g., People v. Amato*, 193 Colo. 57, 562 P.2d 422 (1977). The scope of the doctrine, however, must be 'strictly circumscribed by the exigencies which justify its initiation,' *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978), *quoting Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908 (1968), and the burden is on the prosecution to establish that those exigencies render the warrantless entry truly imperative. *E.g., Mincey v. Arizo-*

na, supra; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Warden v. Hayden, supra; Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)."

In this case the record is devoid of any facts amounting to a reasonable expectation on the part of the officers that any delay in entry would result in the destruction of evidence by the defendant or his flight from the apartment. The undisputed testimony at the suppression hearing established that Leingang's arrest took place approximately one block south of the defendant's apartment. Detective Barnhill, who made the warrantless entry into the defendant's apartment, conceded at the suppression hearing that the defendant was totally unaware of Leingang's arrest. The majority, however, places no significance in this testimony but instead focuses on Leingang's statement to the defendant, made while leaving the defendant's apartment and overheard by the police, that he would return in a few minutes. To construct exigent circumstances from this one statement the majority piles inference upon inference, each of which becomes progressively more speculative than its predecessor. The reasoning apparently goes as follows: Leingang's failure to return would have caused the defendant to believe he had been arrested; the defendant's belief that Leingang had been arrested would prompt him either to destroy whatever contraband remained in the apartment or to flee; this danger of immediate loss of evidence or flight presented the police with an emergency justifying their warrantless entry into the apartment. If the evidence here is sufficient to satisfy the exigent circumstances exception to the warrant requirement, then indeed the exception has swallowed the rule. Simply stated, I believe the record here is devoid of evidence establishing the type of emergency contemplated by the exigent circumstances doctrine.[1]

1. *People v. Williams*, Colo., 613 P.2d 879 (1979), on which the majority relies, is distinguishable from the instant case in several particulars. Williams was aware that a drug sale

involving one pound of cocaine for $30,400 was taking place outside his residence. The sale was being negotiated by the defendants Salnajs and Sullivan, who were acting as middlemen on

## II.

The warrantless entry in this case resulted in the officer's visual observations of the sifter and cardboard box top containing marijuana seeds. However, the core of the affidavit recites facts which occurred prior to the illegal entry, which could not have been tainted in any manner by the illegal entry, and which, when severed from the illegal conduct, provided independent probable cause for the issuance of the search warrant. *See, e.g., United States v. Grummel*, 542 F.2d 789 (9th Cir. 1976), *cert. denied* 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977). Under the circumstances of this case I believe the district court properly suppressed the sifter and the cardboard box containing marijuana seeds as the product of the illegal entry and I would affirm that

part of the court's ruling. However, I agree with the majority that all other items were properly seized as either within the scope of the warrant or demonstrably connected with criminal activity, *see, e.g., People v. Franklin*, Colo., 640 P.2d 226 (1982), and I concur in this aspect of the court's decision.

I am authorized to say that Justice ERICKSON and Justice DUBOFSKY join me in this opinion.

behalf of Williams, and police undercover agents. After obtaining the cocaine from Williams inside the residence, Salnajs brought it to the officers and informed them that one ounce had been removed as compensation to him for arranging the sale. Sullivan at this time was inside the residence with Williams. The cocaine was then exchanged on the street and the officers immediately arrested Salnajs and decided to secure the residence while a search warrant was sought. As they approached the house an individual was seen looking out a window next to the front door. The police forcibly entered the residence and secured it. In upholding the warrantless entry, we stated:

> "Here, the urgent need for prompt arrest to prevent escape and possible destruction of contraband is manifest. Salnajs had brought almost a pound of cocaine to the agents and was to receive $30,400 as the purchase price. The officers had probable cause to believe that Salnajs and Sullivan were middlemen; that their compensation was to be one ounce of cocaine; and that the money for the purchase of the cocaine would be paid to someone else. It was reasonable to believe that Salnajs would be expected by his companions to return promptly to the residence with the money. Salnajs' failure to return promptly could be expected to alarm the other participants. In turn, their alarm would

likely lead to the removal or destruction of contraband, escape, or retaliation against the agents. Prompt action to arrest Sullivan and Williams was imperative in the course of sound police work. We conclude that exigent circumstances existed to enter the residence to make the arrests." Colo., 613 P.2d at 882.

The facts in *Williams* created a reasonable expectation on the part of the officers that any delay in entry would result in the destruction of evidence or escape. In my opinion our decision there represents an appropriate application of the exigent circumstances exception to the warrant requirement. From the standpoint of exigent circumstances the facts of the instant case are much closer to those in *McCall v. People*, Colo., 623 P.2d 397 (1981), where we suppressed a confession as the product of an unconstitutional warrantless arrest of the defendant in his home, noting that prior to the entry there was "no indication of any attempted flight by the defendant ... nor is there any demonstration that the loss or destruction of crucial evidence was imminent." *See, e.g., United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *Johnson v. United States*, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948).